**FA'AAUA'A MALAUULU and TAFAIFA FA'AUA'A for FONOTI FAMILY, Plaintiffs**

**v.**

**TAUILIILI PEMERIKA and DOES I through X, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 28-84

May 31, 1990

Before REES, Associate Justice, OLO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiffs, Asaua Fuimaono
For Defendants, Tau'ese P.F. Sunia

This is a boundary dispute. The contested area consists of about four acres in the vicinity of Tafuna Fou. This land is included *both* within a survey that defendant Tauiliili registered in 1981 *and* within a survey that Fonoti Aufata registered in behalf of the plaintiff Fonoti family in 1984. The Territorial Registrar inadvertently allowed this dual registration, possibly because each offer of registration purported to include only such land as had been held to be the property of the registrant in the celebrated "Fanene Land Claims Trial," consolidated cases LT No. 64-77 et al.

Tauiliili maintains that when his survey was registered in 1981 without objection from Fonoti, the latter was thereafter barred from asserting ownership to any part of it. He contends, therefore, that the later Fonoti registration is void with respect to the four acres already registered by Tauiliili.

It is quite true that a land registration, effected in accordance with the procedures set forth in A.S.C.A. § 37.0101 et seq., establishes good title against the world. *Ifopo v. Siatu'u*, 12 A.S.R.2d 24 (1989). A later registration of the same land would therefore be of no legal effect. This rule applies, however, only when the earlier registration was effected in accordance with all statutory requirements. One of these requirements is that the registered survey have been conducted after public notice by the pulenu'u at a meeting of the chiefs of the village "in which or nearest to which the land is located." A.S.C.A. § 37.0102(b).

In the present case it affirmatively appears of record that the only public notice of this survey was given in the village of Pava'ia'i. The Fonoti plaintiffs, however, claim that the land has traditionally been regarded as part of Tafuna. To the extent they could succeed in proving this contention on the merits, they would also have proven that the 1981 registration was void on its face. "Courts can and do disregard registrations . . . in which the failure to afford the required notice affirmatively appears in the record of the registration itself." *Ifopo*, *supra*, at 28. *See also Faleafine v. Suapilimai*, 7 A.S.R.2d 108 (1988); *Afualo v. Fanene*, 15 A.S.R.2d 48, slip opinion at 9 (1990).

In this case, moreover, each of the two conflicting registrations purported on its face to incorporate the decision in the 1977 Fanene trial, to which both Fonoti and Tauiliili were parties. Whichever of these two registrations incorrectly reflected the decision was in conflict with a prior Court order, specifically binding upon the registrant and adjudicating the extent of his rights. A registration in conflict with such a Court order

72

would appear to void --- or at least voidable in the absence of reliance by innocent third parties --- for the same reasons that a registration would be without legal effect if it conflicted with an earlier valid registration. To hold otherwise would be inconsistent with the principle of *res judicata*: if Tauiliili lost his dispute with Fonoti in Court in 1977, he was not free to relitigate it by offering the same land for registration in 1981.

We hold, however, that Tauiliili has proven his case on the merits. The preponderance of the evidence at trial was to the following effect:

1) Tauiliili began occupying and cultivating this land between in or about 1966, at which time it was virgin bush. By 1969 he had plantings throughout the area now in dispute. Such plantings consisted of coconut trees and perhaps other crops as well. It appears, however, that these crops were more sparse than those within adjoining plantations belonging to Tauiliili. (This finding is based not only on the testimony of Tauiliili himself, but also on that of the surveyor who surveyed the area for Fonoti in 1972. He testified that the area now in dispute contained coconut trees that appeared to be between three and five years old. These would therefore have been planted between 1967 and 1969, which is when Tauiliili says he first planted in this area. On the other hand, the trees are far too young to lend much credibility to the testimony of one Fonoti witness who said her relatives cultivated the area during the early 1950s; and they are too old to buttress the testimony of the other Fonoti witness who says the Fonoti plantings began in the early 1970s.)

2) During the time Tauiliili was beginning to extend his plantings into this area, he and Fonoti Aufata had occasional discussions about their boundary. They eventually agreed that Tauiliili would not cultivate a disputed area to the north of a certain road. This road passes through adjoining lands of both parties and had been built by Tauiliili with the consent of Fonoti. They also agreed that Tauiliili's boundary to the east would be a certain gully or depressed area. This corresponds to the boundary now claimed by Tauiliili.

3) The Fonoti witnesses were not in complete agreement about when Fonoti people began using parts of the land now in dispute. See paragraph (1) above. The most detailed and plausible evidence is that this occurred during the early 1970s.

73

4) In or around 1972 there was a confrontation between Fonoti people and Tauiliili people concerning the area now in dispute. Tauiliili met with Fonoti Aufata, who then told his people to stop using this land. (The late Fonoti's daughter, who is the principal plaintiff in the present proceeding, testified that this forbearance was due only to a family relationship between Tauiliili and Fonoti. It is clear, however, that Tauiliili was using this land on his own account and not to serve Fonoti.)

5) Also in 1972, however, Fonoti surveyed 40.79 acres which include the present four acres. He offered the 40.79 acre survey for registration as the individually owned land of himself and his sisters. Several neighboring landholders, including Tauiliili, objected. The registration was sent to the High Court and became LT No. 1406-74. The Court denied registration on the ground that much of the 40.79 tract was uncultivated and that original clearing and cultivation is essential to a claim that land in Samoa is individually owned. *Fonoti v. Niue*, LT No. 1406-74 (slip opinion issued May 20, 1975).

6) On June 14, 1977, Fonoti Aufata offered the same 40.79 acre tract as the *communal* property of the Fonoti family. There were again several objections, but this time Tauiliili did not object. The registration was sent to the High Court and was designated LT No. 60-77.

7) On June 15, 1977, Tauiliili offered for registration his own survey of 24.4 acres including the tract presently in dispute. Several neighboring landowners filed objections to the registration. Fonoti filed no objection. The contested registration was sent to the High Court for resolution, and was designated LT No. 62-77.

8) The Fonoti and Tauiliili registrations were then consolidated with nine other cases. These consolidated cases, involving several hundred acres and at least fifteen parties, were tried in December of 1977 in what became known as the "Fanene Land Claims Trial."

9) Before or during the trial, Fonoti and Tauiliili again settled their boundary. It may be that this happened during the 60-day period (June to August of 1977) during which both registrations were pending. This would explain why neither party objected to the other's offer of registration.

10) In any case, Court records indicate that by the time of trial the Court was of the opinion that there was no conflict between Fonoti and Tauiliili. *See Fanene v. Magalei*, LT Nos. 64-77 et al., slip opinion

at 19 (issued December 13, 1977) ("Tauiliili has no border dispute with
. . . Fonoti to the east . . . ."). Since the two surveys clearly did
conflict, this opinion on the part of the Court requires some explanation.
Tauiliili offered one: he testified that the presiding judge had asked them
about the overlap between the two surveys, and Fonoti had said he now
agreed with Tauiliili's survey. Unfortunately, the transcript of the 1977
trial was only partly reproduced, so we cannot confirm this. Tauiliili did
introduce, however, a composite map showing the claims of all parties
as of the time of trial. He testified that this map had been prepared not
by a surveyor working for a particular party, but by order of the Court
in order to assist the Court and the parties in understanding where the
conflicts were, and that each party had been given a copy. This map
does appear to be what Tauiliili says it is, and the Court's 1977 opinion
reflects that it did order the preparation of two such maps. *Fanene v.
Magalei*, LT Nos. 64-77 et al., slip opinion at 5 (issued December 13,
1977). The composite map, which does not appear to have been
tampered with, shows no conflict between the claims of Tauiliili and
Fonoti. Rather, it reflects a boundary between the two surveys
corresponding to the boundary now claimed by Tauiliili. It is strong
objective evidence for Tauiliili's claim that he and Fonoti had settled
their boundary along this line.

11) The late Fonoti's daughter testified that there was no
settlement, but that the Court did not find it necessary to resolve the
boundary between Fonoti and Tauiliili because it had *ordered* the two to
settle their own boundary between themselves. This testimony does not
ring true, since the very thing the Court was doing was to settle
boundaries between parties who had been unable to do so. Why not tell
the other thirteen parties to settle their own boundaries? This version of
the 1977 trial also conflicts with the composite map.

12) Tauiliili's testimony is further buttressed by a 1983 affidavit
of Fonoti Aufata himself. In the course of a post-trial proceeding against
another party to the 1977 dispute, Fonoti recounted that "I was awarded
outright . . . the 40.79 acres *less an undisputed portion.*" Affidavit of
Fonoti Aufata, filed June 27, 1983, LT No. 60-77 (emphasis added).

13) The parties agree that during the early 1980s there was yet
another confrontation between Fonoti people and Tauiliili people, and
that once again Fonoti told his family not to go on the land now in
dispute. Fonoti's daughter says this is because her father felt sorry for
Tauiliili, because he was "an outsider" and "would have nothing at all"

75

if he did not have this land. Tauiliili says it was because the land belonged to Tauiliili.

14) Nevertheless, in 1984 Fonoti did register his 40.97 acre survey, including the portion now in dispute which he appeared to have conceded to Tauiliili on several previous occasions. Tauiliili says he believes Fonoti reopened the dispute because he was disappointed that Tauiliili had not testified as a witness for Fonoti in a trial against another neighboring landowner in 1983. The Fonoti witnesses say it is because the land had always belonged to Fonoti.

We conclude that Tauiliili cleared and cultivated this land during the 1960s and is entitled to register it as his individual property, as he did in 1981. The 1984 Fonoti registration is void with respect to this overlapping area, since it conflicts with a prior valid registration. We further conclude that the result we now reach was probably the one intended by the Court in 1977, which did not adjudicate the dispute between Fonoti and Tauiliili because it had been informed of a settlement along the line we now reaffirm.

The relief requested by the complaint is therefore denied and the preliminary injunction is dissolved.

It is so ordered.